IN THE
UNITED STATES DISTRICT COURT
FOR THE
EASTERN DISTRICT OF VIRGINIA
RICHMOND DIVISION

UNITED STATES OF AMERICA      :
     :
v.      : Criminal No.: 3:15CR077(REP)
     :
NASSAU LUCAS,      :

## DEFENDANTS' MOTIONS FOR VARIANCE AND ADJUSTMENT OF THE GUIDELINES

COMES NOW Nassau Lucas ("Mr. Lucas" or "the Defendant") by counsel and asserts that this Court should vary and depart downward from the appropriately calculated sentencing guidelines. Specifically Mr. Lucas asks that this Court impose a sentence of 100 months. This sentence reflects the nature and circumstances of Mr. Lucas' offense, his history and characteristics, and is "sufficient, but not greater than necessary" to serve the purposes of sentencing set forth at 18 U.S.C. § 3553(a)(2).

## PROCEDURAL HISTORY

Mr. Lucas was named in a four-count Indictment returned by an Eastern District of Virginia Grand Jury, Richmond Division. Count One of the Indictment charged the defendant with Distribution of a Detectable Amount of Marijuana, on or about August 11, 2014, in violation of 21 U.S.C. §§ 841(a)(1) and (b)(1)(C). Count Two of the Indictment charged the defendant with Possession of a Firearm by a Convicted Felon, on or about August 13, 2014, in violation of 18 U.S.C. § 922(g)(1). Count Three of the Indictment charged the defendant with Possession of a Firearm by a Convicted Felon, on or about September 12, 2014, in violation of 18 U.S.C. § 922(g)(1). Count Four of the

Indictment charged the defendant with Distribution of a Detectable Amount of Cocaine Base, on or about November 5, 2014, in violation of 21 U.S.C. §§ 841(a)(1) and (b)(1)(C).

On December 30, 2015, this Court conducted a trial on Counts Two and Three. This Court, sitting with a jury, found Mr. Lucas guilty of those two charges. The Court continued sentencing pending the completion of a presentence report.

## FACTS

In August 2014, government agents utilized confidential informants (UC1 and UC2) to make contact with Mr. Lucas. On August 13, 2014, UC#2 made a telephone call to Mr. Lucas. UC#2 asked Mr. Lucas to sell a firearm to him. Mr. Lucas informed UC#2 that he did not possess any firearms. However, Mr. Lucas also told UC#2 that he (Lucas) could obtain a firearm to satisfy the request made by UC#2. UC#2 and Lucas discussed a purchase price and a time to complete the firearm sale.

Two days after the above mentioned phone conversation, government agents equipped a government vehicle with electronic surveillance equipment. UC#2 informed Mr. Lucas that UC#1 was a colleague of UC#2 and that UC#1 would meet with Mr. Lucas to complete the above mentioned purchase. UC#1 drove the specially equipped vehicle to a designated location to meet Mr. Lucas.

Mr. Lucas met UC#1 at the agreed location. Mr. Lucas entered the government vehicle from the front passenger side. Mr. Lucas held an item near his waist and discussed it with UC#1. Mr. Lucas gave the item he was holding to UC#1.

After Mr. Lucas exited the vehicle UC#1 drove the subject vehicle to a secure location and presented the government's lead investigator with an Intertec 9mm semi-automatic pistol. At trial, UC#1 testified that this firearm was the item Mr. Lucas was holding. She further testified that she gave Mr. Lucas US currency in exchange for that item. The electronic surveillance equipment recorded video of the transaction between UC#1 and Mr. Lucas. The video footage does not depict US currency or a firearm.

On September 11, 2014, UC#2 called Mr. Lucas. UC#2 told Mr. Lucas that he wanted to purchase a firearm from one on Mr. Lucas' acquaintances. Mr. Lucas explained that he was unaware of whether the acquaintance possessed a firearm that would satisfy UC#2's request. Mr. Lucas told UC#2 that he (Lucas) could potentially obtain a "Glock" or a "chopper" to satisfy UC#2's request. UC#2 and Mr. Lucas agreed to meet so that UC#2 could obtain a weapon.

The following day, government agents again equipped a police issue vehicle with video surveillance equipment. UC#1 and UC#2 drove that vehicle to meet Lucas at an agreed location. Mr. Lucas approached the police vehicle on foot and holding a green bag. UC#2 told Mr. Lucas to put the green bag in the back seat of the police vehicle. Mr. Lucas complied and then sat in the front seat.

While in the car, UC#2 asked Mr. Lucas if his (Lucas') source of supply had other weapons. Mr. Lucas replied that the source of supply had many weapons. Mr. Lucas did not indicate that he possessed any weapons.

After Mr. Lucas exited the vehicle, UC#1 and UC#2 departed the meeting location. UC#1 and UC#2 retrieved the green bag from the back seat. At trial, the agents testified that the bag contained a Norinco SKS Rifle. The agents testified that they

provided Mr. Lucas US currency in exchange for the bag placed in the car. Similarly to the incident in the August video, surveillance from the September interaction did not depict a firearm.

UC#2 called Mr. Lucas several days after the second transaction. UC#2 expressed dissatisfaction over the quality of the Norinco SKS Rifle. Mr. Lucas apologized. He admitted that he did not regularly posses firearms and that he had only obtained the SKS rifle in an effort to placate UC#2.

## ARGUMENT

## MOTION FOR VARIANCE TO SERVE THE FACTORS SET FORTH § 3553(a)

In imposing a sentence, this Court must determine the applicable guideline range and determine whether a sentence within the guidelines serves the factors in § 3553. United States v. Moreland, 437 F. 3d 424, (4th Cir. 2006). Section 3553(a) provides that a court shall impose a sentence, "sufficient, but not greater than necessary" to reflect the seriousness of the offense, promote respect for the law, provide just punishment, afford adequate deterrence, protect the public from further crimes, and provide adequate treatment to the defendant. U.S. v. Benkahla, 501 F.Supp.2d 748 (E.D. Va., 2007) quoting 18 U.S.C. § 3553(a)(2). In determining what sentence is sufficient but not greater than necessary to comply with the Section 3553(a)(2) purposes of sentencing, the court must consider: (1) "the nature and circumstances of the offense and the history and characteristics of the defendant;" (2) "the kinds of sentences available;" (3) the guidelines and policy statements issued by the Sentencing Commission, including the (now non-mandatory) guideline range; (4) the need to avoid unwarranted sentencing disparity; and (5) the need to provide restitution where applicable. 18U.S.C.§3553(a)(1),(a)(3)-(7). The

defense asserts that a sentence variance is necessary to serve the factors set forth in §
3553(a).  In support of that position, Mr. Lucas notes the following factors.


A. **SENTENCING FACTOR: Nature of the Offense:**


The defense accepts that the instant offense is a serious crime and deserves
significant punishment. Firearm possession by felons presents a severe danger to all
citizens. Mr. Lucas understands that this Court will impose a lengthy period of active
incarceration to punish his actions.

In determining the most appropriate period of incarceration, the defense notes that
Mr. Lucas did not fire or discharge a weapon.  The defense also notes that Mr. Lucas did
not willfully possess the weapons at issue. In both scenarios at bar, governmental agents
encouraged Mr. Lucas to acquire weapons from a separate source.

Courts should not impose extreme punishments when law enforcement officials
and their agents create or manufacture a crime. Lopez v. United States, 373 U.S. 427,
434, 83 S.Ct. 1381 1385, 10 L.Ed.2d 462 (1963). The Government cannot be permitted to
instigate the commission of a criminal offense in order to prosecute someone for
committing it. Sherman v. United States, 356 U.S. 369, 372, 78 S.Ct. 819, 820, 2 L.Ed.2d
848 (1958).  Described another way, the Government may not provoke or create a crime
and then punish the criminal. See Casey v. United States, 276 U.S. 413, 423, 48 S.Ct.
373, 376, 72 L.Ed. 632 (1928) (dissenting opinion).  The Fourth Circuit Court of Appeals
has expressly discouraged governmental conduct that implants a criminal design in the
mind of an alleged criminal. See generally, United States v. Daniel, 3 F.3d 775, 778 (4th
Cir.1993)

In the case at bar, government agents contacted Lucas and asked him to acquire firearms for them. Mr. Lucas repeatedly told governmental agents that he did not possess the weapons the agents sought. The agents financially induced and persuaded Mr. Lucas to obtain the weapons.[1] His present crime in possessing the weapons is the result of Mr. Lucas following the direction of undercover agents.

This governmental action does not entitle Mr. Lucas to acquittal. Mr. Lucas is not without blame. He committed the actions at issue with clear financial motive. However, the governmental action does illustrate that Mr. Lucas may not have possessed the weapons at issue and thus committed these crime but for the encouragement of the undercover agents. The genesis of the criminal scheme at issue sprang from the minds of the agents rather than Mr. Lucas. The agents' inducements mitigate the serious nature of Mr. Lucas' possession of firearms.

Mr. Lucas' mitigated criminal mindset indicates that a sentence below the lowest end of the suggested guideline range would serve the enumerated sentencing factor of recognizing this nature of this defendant's level of offense. The guidelines are not able to compensate for Mr. Lucas' lessened culpability. Accordingly, Mr. Lucas asks this Court to vary downward from the guideline range.

**B. SENTENCING FACTORS: To afford adequate deterence:**

Mr. Lucas has previously been incarcered for short periods of time. A sentence that is three or four times greater than his previous periods of incarcered would be far to great to simply promote the sentencing goal of deterring future criminal conduct. The

instant case will undoubtedly present the most lengthy sentence he has served to date. This leg thy sentence will certainly provide a prophylactic prevention of crimes by Mr. Lucas.

However, the presently suggested sentence of eleven to fourteen years is far greater than needed to provide deterrence and promote respect for the law. A sentence in that range is senselessly eccessive. A lesser sentence would be sufficient but not greater than necessary. A sentence of 100 months would provide ample deterrence for the law and protect the public.

## C. SENTENCING FACTORS: History of the Defendant and to provide just punishment and avoid unwarranted sentencing disparity:

USC §3553(a)(6) requires courts to consider, "the need to avoid unwarranted sentencing disparities among defendants with similar records who have been found guilty of similar conduct." See <u>Pepper v. United States</u>, 131 S. Ct. 1229, 179 L.Ed.2d 196 (2011). United States Sentencing Guideline § 4A1.3 provides that a court may depart downward from advisory sentencing guidelines, "if reliable information indicates that defendant's criminal history category substantially over-represents the seriousness of [Defendant's] criminal history or the likelihood that the defendant will commit other crimes." <u>U.S. v. Benkahla</u>, 501 F.Supp.2d 748 (E.D. Va., 2007) (quoting USSG § 4A1.3. This Court has previously found that misdemeanor convictions may warrant such a departure. (See <u>U.S. v. Ward,</u> 908 F.Supp. 350 (E.D. Va., 1995) granting a one level departure on the basis of a DUI conviction; See also <u>U.S. v. Summers</u>, 893 F.2d 63 (C.A.4 (Va.), 1990) approving a departure based upon a criminal history that reflected three convictions for driving without a license.)

In the instant case, the guidelines represent that the Defendant has the highest possible criminal history category – VI. He reaches this level due to the inclusion of a 6-year-old misdemeanor driving offense and a misdemeanor conviction he incurred when he was 19 years old. (PSR p.10, 11). Outside of those two charges, the majority of Mr. Lucas' crimes are drug offenses. Mr. Lucas' violent offense is a simple assault against a protected person in 2012. He has not been convicted of any crimes since that offense.

In most instances, misdemeanor offenses do not accelerate a defendant to criminal history category VI. In the present case the inclusion of the criminal history points based on misdemeanant offenses skews the Guideline's intended purpose for categorizing an accused's criminal history. Although the Sentencing Commission determined that criminal history should be "a major component" in the sentencing guidelines, the only relevant purpose for that history is if it is pertinent to rehabilitation, deterrence, incapacitation, or just punishment. See 28 U.S.C. 991(A) and 18 U.S.C. 553(a)(2).

Here Mr. Lucas's history of insignificant offenses points to the conclusion that his criminal history category substantially over-represents the seriousness of his criminal history. Mr. Lucas's crimes committed while he was a teenager and history of misdemeanors are not a relevant factor in considering a 'just punishment' for the instant offense.

Criminal history category VI is reserved for the highest offenders. Mr. Lucas' criminal history cannot be said to make him among the most dangerous of all criminal offenders. Thus, his inclusion in the highest criminal history is inappropriate.

Due to the above stated overstated criminal history, this Court should impose a

sentence that departs downward from the presently calculated range. As guidance, the Court should consider a sentence similar reflected in criminal history category V. In doing so, this Court would implement the Sentencing Commission's recognition that, in some cases, a defendant's criminal history category over-represents the seriousness of his criminal history and, therefore, that such a defendant should be treated differently than the "typical" defendant falling into his originally calculated criminal history category. Accordingly, a criminal history category of V better reflects that risk and the seriousness of a person who has only committed largely nonviolent lower level crimes. This Court should depart downward to equitably reflect the true nature of Mr. Lucas's criminal history. Such a departure would be sufficient but not greater than necessary to avoid unwarranted sentencing disparity between Mr. Lucas and other persons that have a similar history of misdemeanor level offenses prior to committing a violation of 18 U.S.C. § 922(g)(1).

## CONCLUSION

WHEREFORE, the Mr. Lucas hereby asserts that the sentencing range suggested in the sentencing guidelines is far greater than necessary to serve the sentencing factors set out § 3553. The defense therefore moves this Court to significantly depart downward from the applicable sentencing guidelines. Specifically, the Defense asserts that an active period of 100 months is an appropriate sentence.

Respectfully submitted,
NASSAU LUCAS

By: _____/s/_____
                Counsel

By_____/s/_____
Vaughan C. Jones, Esq.
Virginia Bar # 41010
1622 W. Main Street
Richmond, Virginia 23220
(804) 788-8880
(888) 816-0116 fax
vaughan@vaughancjones.com

CERTIFICATE OF SERVICE

I hereby certify that on the 16th day of March 2016, I electronically filed the foregoing with the clerk of court using the CM/ECF system, which will send a notification of such filing (NEF) to the following:

David Thomas Maguire, Esquire
United States Attorney's Office
600 E Main Street
Suite 1800
Richmond, Virginia 23219
Phone: (804) 819-5400
david.maguire@usdoj.gov

By_____/s/_____
Vaughan C. Jones, Esq.
Virginia Bar # 41010
1622 W. Main Street
Richmond, Virginia 23220
(804) 788-8880
(888) 816-0116 fax
vaughan@vaughancjones.com