```
         IN THE UNITED STATES DISTRICT COURT
        FOR THE EASTERN DISTRICT OF VIRGINIA
                    Richmond Division
```

UNITED STATES OF AMERICA

v.                                         Criminal No. 3:15CR77

NASSAU LUCAS,

    Petitioner.

### MEMORANDUM OPINION

Nassau Lucas, a federal inmate proceeding pro se, brings this MOTION UNDER 28 U.S.C. § 2255 TO VACATE, SET ASIDE, OR CORRECT HIS SENTENCE ("§ 2255 Motion," ECF No. 75). For the reasons set forth below, the § 2255 Motion will be denied.[1]

### I.  PERTINENT PROCEDURAL HISTORTY

On April 22, 2015, Lucas was charged in a four-count Indictment with: distribution of marijuana (Count One); possession of a firearm (an Intratec 9mm semi-automatic pistol) by a convicted felon (Count Two); possession of a firearm (a Norinco semi-automatic rifle) by a convicted felon (Count Three); and, distribution of cocaine base (Count Four). (ECF No. 1, at 1-4.) The Court granted Lucas's motion for separate trials on the firearm and drug distribution charges. (ECF No. 32.) After a two-day

---

[1] The Court employs the pagination assigned by the CM/ECF docketing system. The Court corrects the capitalization, punctuation and spelling in the quotations from the parties' submissions. The Court omits the emphasis from the parties' submissions.

jury trial, Lucas was convicted on both firearm counts. (ECF No. 36-37.) On April 7, 2016, the Court sentenced Lucas to 120 months on Count Two and 20 months on Count Three, to be served consecutively. (ECF No. 59, at 1-2.)

Lucas appealed. The United States Court of Appeals for the Fourth Circuit affirmed the judgment of the District Court. (ECF No. 71, at 4.)

## II. LUCAS'S GROUND FOR RELIEF

Lucas initially raises seven grounds for relief:

Claim One "Both trial and appellate counsel rendered ineffective assistance of counsel when failing to raise the palpable defense of 'entrapment' as there was clearly an absence of mens rea on Petitioner Lucas's behalf." (ECF No. 76, at 13.)

Claim Two "The government's recitation of facts mischaracterizes the record: there is no testimony other than Officers Erica Hall, Elmer Fernandez and [Task Force Officer ("TFO"] Kielb that supports the conclusion that Petitioner Lucas's participation and involvement in the alleged transfer and sale of firearms to law enforcement exceeded making introductions between the buyer and seller." (Id. at 37.)

Claim Three "Petitioner Lucas has been exponentially prejudiced by the trial counsel's failure to request the Court charge the jury with an 'entrapment instruction' effectuating plain error adversely affecting his substantial rights." (Id. at 40.)

2

| | |
|---|---|
| Claim Four | "Petitioner Lucas's Sixth Amendment right under the Confrontation Clause was egregiously violated when he was unjustifiably and inexplicably denied his constitutionally protected rights and opportunity to confront and cross-examine 'reliable source' and paid confidential informant, Thomas Jones. (Id. at 42.) |
| Claim Five | "Appellate counsel Andrew M. Stewart, Esq. inappropriately filed an appellate brief to the Fourth Circuit pursuant to Anders v. California, 386 U.S. 738 (1967) when in fact there were non-frivolous issues such as an entrapment defense and entrapment jury instruction that should have been pursued by trial counsel." (Id. at 45.) |
| Claim Six | "Trial counsel erred to the prejudice of Petitioner Lucas when [he] failed to ask the Court for a 'mens rea' instruction necessary to perfect the required instruction for a violation of 18 U.S.C. § 922(g)(1), Possession of a Firearm by a Convicted Felon." (Id. at 48.) |
| Claim Seven | "Petitioner Lucas respectfully asserts the is entitled to an evidentiary hearing on these matters." (ECF No. 50.) |

In addition to these claims of error, Lucas made a host of cursory, and largely frivolous, claims of ineffective assistance of counsel, Claims Eight (a) through Eight (x). (ECF No. 76, at 27-30.)

| | |
|---|---|
| Claim Eight | (a) Trial counsel failed to pursue a misidentification defense. (Id. at 27.)<br>(b) Trial counsel failed to contest the voice exemplar recordings of the firearm transaction. (Id.) |

3

(c) Trial counsel failed to conduct a proper investigation of the firearms. (Id.)

(d) Trial counsel failed to move to suppress the identification testimony. (Id. at 28.)

(e) Trial counsel failed to obtain an expert to prepare Lucas's social history. (Id.)

(f) Trial counsel failed to present witnesses that could have impeached the prosecution witnesses. (Id.)

(g) Trial counsel failed to properly voir dire jury and adequately cross-examine government witnesses.

(h) Trial counsel failed "to investigate the scientific aspects of the government's case." (Id.)

(i) Trial counsel failed to retain a fingerprint expert. (Id.)

(j) Trial counsel failed to object to the Virginia Employment Commission's records pertaining to Lucas. (Id.)

(k) Trial counsel failed to object to Detective Kielb's testimony about a meeting at a 7-Eleven on New Market Road. (Id.)

(l) Trial counsel failed to object to Officer Fernandez's testimony about the being moved from the 7-Eleven to a BP gas station. (Id.)

(m) Trial counsel failed to object to the "nine millimeter semiautomatic pistol with 32 rounds of ammunition . . . being sold and transferred by Petitioner Lucas to law enforcement officers." (Id. at 29.)

(n) Trial counsel failed to object to the Government's contention that Lucas received marked currency. (Id.)

(o) Trial counsel failed to object to the admission of the Government's Exhibit 10. (Id.)

(p) Trial counsel failed to object to Kielb's testimony that what he captured on the video is what he wanted. (Id.)

4

> (q) Trial counsel failed to object to Kielb's testimony about fingerprints. (Id.)
> (r) Trial counsel failed to object to Detective Kielb's testimony about receiving the target's phone number. (Id.)
> (s) Trial counsel failed to object to Detective Kielb's testimony that the video captured a black book bag in Lucas's hand;
> (t) Trial counsel failed to object to Officer Hall's testimony that Lucas retrieved a black bookbag from a BMW. (Id. at 29-30.)
> (u) Trial counsel failed to object to Officer Hall's testimony about Lucas placing the duffel bag that contained the SKS assault rifle in the police vehicle. (Id. at 30.)
> (v) Trial counsel failed to object to Officer Fernandez's testimony that Lucas's firearm connection had recently sold two Glocks. (Id.)
> (w) "Trial counsel[] fail[ed] to object to the officers' testimony regarding the taped conversations . . . ." (Id.)
> (x) Trial counsel failed to object to the admission of the taped conversations between Lucas and his mother from the Pamunkey Jail on September 28, 2015. (Id.)

The Government responded, asserting that Claims Two and Four are procedurally defaulted, and the remaining claims lack merit. For the reasons set forth below, Lucas's § 2255 Motion (ECF No. 75) will be denied.

### III. PROCEDURAL DEFAULT

The procedural default rule bars Claims Two and Four from review here, absent a showing of cause and prejudice or actual

5

innocence, because Lucas could have raised, but did not raise these claims at trial level or on direct appeal. See Bousley v. United States, 523 U.S. 614, 622-23 (1998); United States v. Frady, 456 U.S. 152, 167-68 (1982). To the extent that Lucas contends that the ineffective assistance of counsel constitutes cause to excuse his default of Claims Two and Four, that contention lacks merit for the reasons discussed below. (See infra Part IV.C.) Accordingly, Claims Two and Four will be dismissed.

## IV. INEFFECTIVE ASSISTANCE OF COUNSEL

### A. Applicable Law

To demonstrate ineffective assistance of counsel, a convicted defendant must show first, that counsel's representation was deficient and second, that the deficient performance prejudiced the defense. Strickland v. Washington, 466 U.S. 668, 687 (1984). To satisfy the deficient performance prong of Strickland, the convicted defendant must overcome the "'strong presumption' that counsel's strategy and tactics fall 'within the wide range of reasonable professional assistance.'" Burch v. Corcoran, 273 F.3d 577, 588 (4th Cir. 2001) (quoting Strickland, 466 U.S. at 689). The prejudice component requires a convicted defendant to "show that there is a reasonable probability that, but for counsel's unprofessional errors, the result of the proceeding would have been different. A reasonable probability is a probability

sufficient to undermine confidence in the outcome." Strickland, 466 U.S. at 694. In analyzing ineffective assistance of counsel claims, it is not necessary to determine whether counsel performed deficiently if the claim is readily dismissed for lack of prejudice. Id. at 697.

### B. Alleged Deficiency With Respect To An Entrapment Defense

Although he brings a host of other claims, Lucas's central complaint was that counsel was deficient for failing to pursue an entrapment defense. "Entrapment is an affirmative defense and the initial burden is on the defendant to go forward with evidence beyond a mere scintilla that the government induced him to commit an offense he was not otherwise predisposed to commit." United States v. Osborne, 935 F.2d 32, 38 (4th Cir. 1991) (citing United States v. Davis, 902 F.2d 860, 866 (11th Cir. 1990); United States v. Perl, 584 F.2d 1316, 1321 (4th Cir. 1978)). The Fourth Circuit has explained:

> An entrapment defense consists of "two related elements": (1) government inducement to commit a crime and (2) the lack of predisposition on the part of the defendant to engage in criminal conduct. Mathews v. United States, 485 U.S. 58, 62-63 (1988). The first element, "inducement," requires more than mere solicitation by the government, United States v. Velasquez, 802 F.2d 104, 106 (4th Cir. 1986); "inducement" is a "term of art" necessitating "government overreaching and conduct sufficiently excessive to implant a criminal design in the mind of an otherwise innocent party." United States v. Daniel, 3 F.3d 775, 778 (4th Cir. 1993); see also United States v. Gendron, 18 F.3d 955, 961-62 (1st Cir. 1994) (describing examples of government overreaching

7

> constituting inducement). The second element, "predisposition," refers to "the defendant's state of mind before government agents make any suggestion that he shall commit a crime," United States v. Osborne, 935 F.2d 32, 37 (4th Cir. 1991); the government does not entrap a defendant, even if he does not specifically contemplate the criminal conduct prior to this "suggestion," if "his decision to commit the crime is the product of his own preference and not the product of government persuasion." Id. at 38.

United States v. Hsu, 364 F.3d 192, 198 (4th Cir. 2004). As explained below, counsel wisely eschewed pursuing an entrapment defense because Lucas was not induced to commit the crimes and Lucas could not demonstrate lack of predisposition.

### 1. Summary Of The Evidence

Detective Michael Kielb testified that in June of 2014 he became involved in an investigation of Lucas. (ECF No. 67, at 81.) In August of 2014, Officer Erica Hall also joined in this investigation. (Id. at 169.) Hall testified that she would play the part of the girlfriend of another undercover officer, Detective Fernandez. (Id.) On August 13, 2014, Officer Hall and a confidential source traveled to the Oakland Village Apartments in a car that had been wired with a camera. (Id. at 169-172.) The confidential source sent Lucas a text message. (Id. at 172.) Lucas then left an apartment, walked to a blue BMW, and retrieved a black bookbag.[2] (Id.)

---

[2] Officer Hall alternately refers to the bag containing firearms as a backpack or a bookbag.

8

Lucas then walked over the Officer Hall's vehicle and got in the front passenger seat. (Id. at 172-73.) Officer Hall asked Lucas, "[W]hat's up." (Id.) Lucas responded that the "jank" (i.e., the firearm) is inside the backpack. (Id. 173-74.) Lucas then opened the bookbag and pulled out what appeared to be a Intratec-9 firearm and a magazine for the weapon. (Id. at 174-75, 182.) Lucas then started to wipe off the weapon. (Id. at 175.) Officer Hall stated, "[Y]ou should have just wiped it down prior to you giving it to me." (Id.) Officer Hall then gave Lucas $850 in exchange for the firearm. (Id. at 175, 183.) At trial, the Government then played a video and audio recording that captured Lucas's sale of the Intratec-9 to Officer Hall.

On September 11, 2014, Detective Fernandez, in his undercover role as a gun-runner, placed a recorded call to Lucas. (ECF No. 68, at 12-13.) Lucas told Detective Fernandez that he had a chopper (an assault rifle) for sale. (Id. at 13.) Lucas further stated that later on he might be able to sell Detective Fernandez a Glock. (Id. at 16-17.) Lucas agreed to meet with Detective Fernandez the next day and to sell him the assault rifle. (Id. at 17-18.)

In a recorded telephone conversation from September 12, 2014, between Lucas and Detective Fernandez, Lucas stated that he could not obtain the Glock. (Id. at 18-19.) Lucas, however, stated that he did have the assault rifle. (Id. at 19.)

Around 12:30 p.m. that day, Lucas texted Detective Fernandez and set up a location for the sale of the assault rifle. (Id. at 19-20.) They agreed to meet at the 7-Eleven parking lot on Route 5. (Id. at 20.) As they arrived at the 7-Eleven, Lucas moved his BMW to a BP gas station across the street because there were too many people at the 7-Eleven. (Id. at 21-22, 27.) Detective Fernandez and Officer Hall, moved their vehicle to the BP gas station. (Id. at 22.)

When Detective Fernandez and Officer Hall arrived at the BP gas station, Lucas exited his vehicle, carrying a duffel bag. (Id. at 23.) Lucas got in the passenger seat of Detective Fernandez's vehicle. (Id. at 25.) Lucas placed the duffel bag containing an assault rifle and ammunition in the back of Detective Fernandez's vehicle. (Id. at 24-25.) Detective Fernandez then provided Lucas with $800.00. (Id. at 25.) Lucas then explained that his source for firearms had sold 2 Glocks the night before, so those guns were not available, but he should be able to get some more then next week. (Joint Appendix ("JA") at 262-63.) Lucas and Detective Fernandez then briefly discussed the potential price for the Glocks. (Id. at 263.)

On September 15, 2014, in a recorded phone call, Detective Fernandez called Lucas about obtaining more firearms. (Id. at 265-66.) Lucas explained that he was actively looking for other firearms and asked Detective Fernandez what sort of firearm he had

in mind. (Id. at 267-269.) After Detective Fernandez told Lucas the firearms he desired, Lucas agreed to contact him once he had obtained them. (Id. at 268-69.)

### 2. Failure To Call Thomas Jones To Support An Entrapment Defense

Initially, Lucas faults counsel for failing to call Lucas's long-time friend and the government confidential informant, Thomas Jones, to support an entrapment defense. Lucas contends that in July of 2014, Jones "ceaselessly, endlessly, and incessantly began telephonically contacting Petitioner Lucas regarding the purchase of a firearm for a 'friend' of C.I. Jones." (ECF No. 76, at 17.) Lucas insists that he "continuously advised C.I. Jones that he did not have any firearms nor did [he] know where he (C.I. Jones) could purchase firearms." (Id.)

This claim suffers from several fundamental defects. First, Lucas fails to submit any proffer from Jones that he would testify that he harassed Lucas into brokering the firearm transactions. See United States v. Terry, 366 F.3d 312, 316 (4th Cir. 2004) (requiring "concrete evidence" of exculpatory testimony); Bassette v. Thompson, 915 F.2d 932, 940-41 (4th Cir. 1990) (requiring proffer of mitigating evidence to state a claim of ineffective assistance). Second, none of the statements to which Lucas refers would "persuade an otherwise innocent person to commit a crime." United States v. Wright, 333 F. App'x 772, 777 (4th Cir. 2009)

11

(quoting United States v. Ramos, 462 F.3d 329, 334 (4th Cir. 2006)). Third, and most fatally, Lucas's prior criminal record, as well as the record in this case, reflect rather conclusively that he was predisposed, and in fact enthusiastic, about possessing and selling firearms for a profit. United States v. Blitch, 773 F.3d 837, 845 (7th Cir. 2014) ("Prior convictions for similar offenses are 'relevant but not conclusive evidence of predisposition; a defendant with a criminal record can be entrapped.'" (quoting United States v. Mayfield, 717 F.3d 417,441 (7th Cir. 2014))), as amended on denial of reh'g and reh'g en banc (Jan. 27, 2015). Accordingly, Lucas fails to demonstrate that counsel was deficient or that he was prejudiced by the failure to call Jones to support an entrapment defense.

### 3. Failure To Request An Entrapment Instruction

Lucas also faults counsel for failing to request a jury instruction to support an entrapment defense. It is clear from the record that the failure to request an entrapment instruction was a reasonable tactical decision to which Lucas agreed. Towards the conclusion of the Government's case, the parties agreed that if Lucas pursued an entrapment defense and instruction, the Government would be allowed to introduce evidence of Lucas's prior firearm related offense to show predisposition. (ECF No. 68, at

12

108.)³  The Government indicated that if Lucas did not seek an entrapment instruction, it would make no effort to inform the jury regarding Lucas's prior conviction for possession of ammunition by a convicted felon.  (Id.)  Lucas was fully aware of these facts and after discussing with counsel the risks posed if the jury was informed of his prior firearm-related convictions, decided not to pursue an entrapment instruction.  (Id. at 108-09.)  Given these circumstances and the general weakness of Lucas's entrapment defense, counsel acted reasonably in declining to request an entrapment instruction.⁴  Moreover, Lucas has not demonstrated that he was prejudiced by the failure to request an entrapment instruction.  Accordingly, those aspects of Claims One and Three

---

³ On February 9, 2012, Lucas pled guilty in the Circuit Court for the County of Henrico of possession or transportation of ammunition by a convicted felon.  (ECF No. 46 ¶ 63.)  Lucas also had two separate convictions for carrying a concealed weapon.  (Id. ¶¶ 59, 63.)

⁴ Lucas's trial counsel has submitted a declaration wherein he swears that:
> I extensively researched and prepared for an entrapment defense.  Mr. Lucas and I discussed the viability of an entrapment defense on many occasions.  Ultimately, he decided that he was unwilling to risk[] having the government inform the jury of the nature of his prior convictions.  He affirmed these conversations in court during trial.  Mr. Lucas understood that not eliciting evidence of entrapment would preclude the defense from seeking an entrapment jury instruction.  Mr. Lucas agreed in private conversation and on the record that he did not wish to seek an entrapment defense or an entrapment jury instruction.

(ECF No. 91-1 ¶ 10.)

pertaining to trial counsel's conduct with respect to the pursuit of an entrapment defense lack merit and will be dismissed.

For similar reasons, Lucas's assertions, in Claims One and Five, that appellate counsel performed deficiently by failing to pursue the entrapment issue on appeal, lacks merit and will be dismissed.

### C. Alleged Ineffective Assistance Of Appellate As Cause To Excuse The Default Of Claims Two And Four

In Claim Two, Lucas contends that the Government mischaracterized the evidence, which, he maintains, merely reflected that he made introduction between a buyer and seller. In Claim Four, Lucas contends that his rights under the Confrontation Clause were violated because Thomas Jones, the Government's confidential source, was not called as a witness. As noted above, Lucas defaulted both these claims. Lucas suggests the ineffective assistance of appellate counsel constitutes cause to excuse his default. Appellate counsel reasonably chose not to pursue either of these frivolous claims. The Government did not mischaracterize the evidence. Lucas possessed both the firearms and brokered their sale to the undercover officers. Additionally, the Government's failure to call Jones as a witness did not violate the Confrontation Clause.[5] Accordingly, the Court rejects Lucas's

---

[5] The Sixth Amendment's Confrontation Clause states that "[i]n all criminal prosecutions, the accused shall enjoy the right . . . to be confronted with the witnesses against him." U.S.

contention that the ineffective assistance of appellate counsel constitutes cause to excuse his default of Claims Two and Four.

### D. Alleged Ineffective Assistance For Failing To Request A Heightened Mens Rea Instruction

In Claim Six, Lucas contends that counsel should have requested a heightened mens rea instruction as required by Staples v. United States, 511 U.S. 600 (1994). In Staples, the Supreme Court implied a mens rea requirement into 26 U.S.C. § 5861(d), a provision that made it "unlawful for any person . . . to receive or possess a [machinegun] which is not [federally] registered to him." 511 U.S. at 605. The Court held the statute did require the Government to prove mens rea because a contrary ruling would "criminalize a broad range of apparently innocent conduct." Id. at 610 (citation omitted).

At the time of Lucas's trial, the settled law in the Fourth Circuit "held that knowledge of one's prohibited status [(i.e., convicted felon)] was not a required element of a § 922(g)

---

Const. amend. VI. "The Amendment contemplates that a witness who makes testimonial statements admitted against a defendant will ordinarily be present at trial for cross-examination, and that if the witness is unavailable, his prior testimony will be introduced only if the defendant had a prior opportunity to cross-examine him." Giles v. California, 554 U.S. 353, 358 (2008) (citation omitted). Lucas fails to identify any testimonial statements made by Jones that were admitted against him. Lucas's real complaint with respect to Jones is that counsel was deficient for failing to call him as a defense witness. (See ECF No. 76, at 44.) That complaint lacks merit for the reasons stated above.

15

offense." United States v. Gary, 954 F.3d 194, 202 (4th Cir. 2020) (citing United States v. Langley, 62 F.3d 602, 606 (4th Cir. 1995) (en banc)), cert. granted, 141 S. Ct. 974 (2021).[6] Counsel does not act deficiently by following "the controlling circuit law at the time." United States v. McNamara, 74 F.3d 514, 517 (4th Cir. 1996). Accordingly, Claim Six will be dismissed because Lucas fails to demonstrate deficiency on the part of counsel.

### E. Cursory Claims Of Ineffective Assistance Of Counsel

In Claims Eight (a) through Eight (x) makes a series of passing critiques of counsel. Such claims warrant only abbreviated treatment. See Sanders v. United States, 373 U.S. 1, 19 (1963) (finding denial of habeas action appropriate where it "stated only bald legal conclusions with no supporting factual allegations").

In Claim Eight (a), Lucas contends that counsel performed deficiently by failing to pursue a misidentification defense and in Claim Eight (d), Lucas asserts that counsel should have moved to suppress the identification testimony. There were no legal or factual deficiencies with respect to the witnesses' identification of Lucas. Accordingly, Claims Eight (a) and Eight (d) will be

---

[6] In 2019, the Supreme Court abrogated Langley and held that the Government must prove not only that a defendant charged pursuant to § 922(g) knew he possessed a firearm, but also that he knew he belonged to a class of persons barred from possessing a firearm. Rehaif v. United States, 139 S. Ct. 2191, 2200 (2019).

dismissed because Lucas fails to demonstrate deficiency or prejudice.

In Claim Eight (b), Lucas faults counsel for failing to challenge the audio recordings of the firearm transactions. Lucas fails to demonstrate how counsel could have successfully challenged the introduction of the audio recordings. Claim Eight (b) will be dismissed because Lucas fails to demonstrate deficiency or prejudice.

When a defendant contends that counsel conducted an inadequate investigation or failed to call or properly cross-examine a witness, he must proffer what the proper investigation or cross-examine would have revealed or what the missing witness would have said. See Terry, 366 F.3d at 316 (observing that where a petitioner faults counsel for not calling a witness, the petitioner should provide "concrete evidence of what [the witness] would have testified to in exculpation"); Bassette, 915 F.2d at 941. Lucas's conclusory critiques of counsel's performance in Claims Eight (c),[7] Eight (e), Eight (f), Eight (g), and Eight (h) run afoul of the requirements. Moreover, trial counsel's declarations dispel Lucas's contentions that his counsel performed

---

[7] Contrary to Lucas's suggestion in Claim Eight (c) (ECF No. 95, at 18-19), the Government was not required to demonstrate that the firearms were operable in order to obtain a conviction under 18 U.S.C. § 922(g)(1). See United States v. Adams, 137 F.3d 1298, 1300 (11th Cir. 1998) (citations omitted).

17

deficiently or that Lucas was prejudiced by some deficiency on the part of counsel. Specifically, counsel swears:

> In private conversations, Mr. Lucas suggested that the video depicting his commission of the crime had been altered. I investigated the chain of custody and methods by which video images could be altered. I was unable to find any credible suggestion that video such as this could be altered.
> I spent several weeks preparing specifically for this trial. I met with the attorney for the United States and witnesses for the United States. I investigated all evidence relevant to the issues at trial. There was no issue of misidentification as Mr. Lucas's image is clearly visible in the video evidence depicting the crime. The jury was able to compare the voice heard on audio recordings with that of Mr. Lucas in video evidence. There was no relevance to the testing of the firearm at issue. Mr. Lucas did not provide the name or identity of any witness that would have been helpful to his defense. Additionally, the facts of the case do not imply that any witness would have been relevant to the issue of whether he purchased a firearm.
> . . . .
> Despite the scant issues for defense I was able to raise significant doubt concerning the reliability of police recording equipment. I also attacked the credibility of a veteran police officer concerning an internal affairs investigation regarding that officer's truthfulness. I further exposed the inability to view Mr. Lucas in one of the videos. Finally, cross-examination and careful review of evidence receipts revealed questionable access to police funds used for the purchase of the firearm at issue.

(ECF No. 91-1, ¶¶ 2-3, 5 (paragraph numbers omitted).) Claims Eight (c), Eight (e), Eight (f), Eight (g), Eight (h), and Eight (i) will be dismissed because Lucas fails to demonstrate deficiency or prejudice.

In Claim Eight (j), Lucas faults counsel for failing to object to the introduction of the Virginia Employment Commission's

records for Lucas reflecting that he had no reportable income since 2011. (ECF No. 67, at 133.) Counsel, however, did successfully object to the introduction of these records. (Id. at 90-99, 133.) Accordingly, Claim Eight (j) lacks merit and will be dismissed.

In Claims Eight (k) through Eight (w), Lucas faults counsel for failing to object to various aspects of the testimony of Detective Kielb, Officer Fernandez, and Officer Hall. Lucas fails to identify the basis for any objection much less demonstrate that the objection would have been sustained. Therefore, Lucas fails to demonstrate deficiency. Moreover, given the overwhelming evidence of Lucas's guilt, Lucas fails to demonstrate prejudice. Accordingly, Claims Eight (k) through Eight (w) will be dismissed.

In Claim Eight (x), Lucas faults counsel for failing to object to the admission of the taped conversation between Lucas and his mother from the Pamunkey Jail on September 28, 2015. Lucas complains the taped conversation "primarily focused on previous discussions that had occurred with former counsel." (ECF No. 76, at 30.) The taped conversation does not contain privileged information. (JA 270.) Lucas fails to identify any basis on which counsel could have successfully objected to the introduction of the taped conversation. Accordingly, Claim Eight (x) will be dismissed.

Lucas's demand for an evidentiary hearing in Claim Seven is denied and Claim Seven will be dismissed.

19

## V. CONCLUSION

Lucas's Motion for Expedited Consideration (ECF No. 96) will be granted. Lucas's Motion for Summary Judgment (ECF No. 92) will be denied. Lucas's claims will be dismissed. Lucas's 28 U.S.C. § 2255 Motion (ECF No. 75) will be denied. The action will be dismissed. A certificate of appealability will be denied.

The Clerk is directed to send a copy of the Memorandum Opinion to Lucas and counsel of record.

It is so ORDERED.

/s/ REP
Robert E. Payne
Senior United States District Judge

Richmond, Virginia
Date: May 12, 2021

20